STOUT *v.* BROWN.

Opinion delivered October 9, 1897.

ATTACHMENT SALE—IRREGULARITIES.—In ordering a sale of attached property the court failed to fix the time, place and terms of sale, as required by Sand. & H. Dig., § 366. No notice of the sale was given in a newspaper. There was evidence that such irregularities might have affected the price for which a part of the property was sold. *Held,* that as to that part of the property the sale should be set aside. (Page 313.)

Appeal from Benton Circuit Court.

EDWARD S. McDANIEL, Judge.

*E. P. Watson,* for appellants.

The court in its order of sale should fix the time, terms and place of sale for attached property, and also specify the length and manner of giving of the notice for same. Sand. & H. Dig., § 366. The return of the officer should show that the sale of the lots and lumber was advertised, as required by statute. *Ib.* § 4685.

PER CURIAM. The facts of this case are as follows: W. W. Brown brought suit against J. P. Sewell and C. R. Stout, and attached certain lots, also 48,000 feet of lumber. Upon a trial against Stout for the sum of $1,401.71, the attachment was sustained, and the property attached ordered to be sold. Afterwards the sheriff sold the property attached, and reported the sale to the circuit court. The apppellant, Stout, filed his exceptions to the sale, and asked that it be set aside and a new sale ordered. Among other objections to the sale not necessary to notice, the appellant asked that it be set aside because the court, in its order of sale, failed to fix the time, place and terms of sale, and failed to specify the notice that should be given of the sale; second, that no notice of the sale of the lumber was given by publication in a newspaper as required by statute, and that for this reason the lumber sold for an inadequate price. Upon a hearing the exceptions were overruled, and the sale confirmed, and the case brought here by appeal.

A section of our statute regulating the sales of attached property is as follows: "The sales shall be public upon such notice and at such place as the court may direct. When credits are given, bonds with security shall be required; and the credit shall not be longer than three months for personal property, and not less than three nor more than twelve months for real property, or on installments equivalent to not more than twelve months credit on the whole; and upon real property a lien shall be retained. The sales shall be subject to the confirmation of the court." Sand. & H. Dig., § 366. This statute clearly requires that, in ordering a sale of attached property, the court should fix the time, place, and terms of sale, and specify the notice upon which the sale was made. It is important that this requirement of the statute should be followed, for, as was said by the Supreme Court of Illinois, it operates "to assure the purchaser that his bid will be received if there is no departure from the requirements of the decree in conducting the sale, and thereby tends to increase the price of the property sold." *Sowards* v. *Pritchett*, 37 Ill. 518; *Harlan* v. *Murrell*, 3 Dana (Ky.), 181. But the judgment of the court in this case condemning the property to be sold did not fix the time, place, or terms of sale, or specify upon what notice the sale should be made, and therefore did not follow the statutory requirement.

In addition to this, our statute (Sand. & H. Dig., § 4684) requires that the advertisement of sales of property made under orders of the circuit court be published in some newspaper, but no such publication was made of the sale of lumber in this case. The 48,000 feet of lumber sold brought $285.75. The appellant Stout testified that this sum was far below its actual value, and that the lumber was sacrificed for want of bidders, but there was also evidence to the contrary. While the irregularities above noticed would not affect the validity of the sale in a collateral proceeding, yet this is a direct attack by appeal from the order confirming the sale. In view of the fact that it is doubtful whether the lumber brought a fair price, and as there were irregularities in the sale that might have affected the price for which it sold, we are of the opinion that the sale of the lumber should be set aside, and a resale ordered, if it be still within the jurisdiction of the court.

As to the sale of the town lots, the return of the sheriff shows that they were duly advertised by publication, in accordance with the the statute. The court had jurisdiction to order and confirm the sale. As there is nothing in the evidence to show, nor is there any contention on part of appellant, that the lots sold for less than a fair price, or that the price was in any way affected by the failure of the court to direct the terms of sale, we conclude that this failure did not injuriously affect the rights of appellant, and was, as to the lots, harmless error. The confirmation of the sale did not affect the right of appellant to redeem within the statutory period, but that time has now expired. We have considered, but deem it unnecessary to discuss, the numerous other points raised by apellant.

The judgment of confirmation is reversed as to the sale of the lumber, and in other respects affirmed.

BUNN, C. J., (dissenting). Two questions only have given serious concern to the court in the consideration of this case.

The first is: The court having, in a general way, rendered judgment in attachment for the plaintiff, and ordered the attached property sold, and having failed in its order to give specific directions as to the notice, time, terms and place of the sale, as required by section 336 of Sandels & Hill's Digest, was it proper for the clerk afterwards to issue a special execution—a writ of *venditioni exponas*—and for the sheriff to sell the property thereunder?

I have been unable to find a satisfactory case on the subject, but, in *Cotton* v. *Atkinson*, 53 Ark. 98, this court said: "The sheriff would not be in default in failing to sell the condemned property until a legal demand has been made upon him for the execution of the order of condemnation—as by delivery to him of a special execution for the sale of the property, or a copy of the order of condemnation. He may make a valid sale of the property without either, but he is entitled to the special execution or copy of the order for his guidance, and, unless he waives it, there is no dereliction of duty on his part in failing to make the sale."

In that case, the ex-sheriff was sued for failure to sell property condemned to be sold in attachment proceedings, and

for permitting waste. The defense was that no notice of the order of sale was called to the attention of the sheriff, and that he was not requested to execute it. The ruling of the court was to the effect that either a copy of the order or the special execution, delivered to him while in office, would have been equivalent to a demand upon him to sell the property, and that he would have been bound to execute either, but, as he had gone out of office, the special execution was improperly directed to him, and he therefore, having no authority to execute it, was not liable for failing to do so.

The precise question in the case at bar did not arise in that case, and the language of the court may or may not be, for that reason, more in the nature of *dicta*, but the decision has the effect of recognizing the validity of an attachment sale under a writ of *venditioni exponas* or special execution.

The second question arising is as to the validity of the notice of the sale of the personal property, as given by the sheriff. The notice was in strict compliance with section 690 of the code of civil procedure, and the real question is whether or not that section of the code has been amended by subsequent enactments of the legislature on the subject of legal advertisements and notices. The first of these enactments, after the adoption of the code, was the first section of the act approved February 15, 1875, and numbered section 4356 in Mansfield's Digest. This section, as universally construed, did not make any change in the mode of giving legal notices from that provided in section 690 of the code.

By section 4 of an act approved April 14, 1891, it is left in doubt whether or not the said section of the code is amended thereby by implication; but by the act approved April 14, 1893, amendatory of the 4th section of the act of 1891, as construed by the majority of the court, the said section 690 of the code was altered, so as to make the mode of giving notice different; and the language of the amendatory act may be said to be such as to justify the construction thus put upon it. But this, of itself, gives rise to the question of the validity of the amendatory act, since, if it is an amendment of the code provision, it is an amendment by implication only. We are thus brought face to face with the question whether or not a section of the

code can be amended by implication at all, and especially in the manner stated.

I do not desire to reopen the question, in so far as it has been decided by this court, and therefore leave it with only the remark that, in the several cases on the subject decided by this court, each case has been made to turn on its own peculiar facts, to determine whether or not it comes under the constitutional inhibition, which is thus expressed: "No law shall be revived, amended or its provisions extended or conferred by reference to its title only; but so much thereof as is to be revived, amended, extended or conferred shall be re-enacted and published at length."

In *Little Rock* v. *Quindley*, 61 Ark. 622, this court said: "It *plainly appears* from it [the repealing act] that the intention of the legislature was to require all assessments by local improvement districts in cities of the first class to be paid to, and collected by, the [city] collector. *To understand its meaning and effect, no reference is required to be made to any other.*" The provisions of the code of civil procedure stand on somewhat a different footing from ordinary legislative enactments, first, because of a multifariousness of subject, and second, because of the necessity for them to possess a character less subject to frequent changes and alterations. For these reasons, the constitutional convention of 1868, as part of its proceedings, and as part of the constitution adopted by it, adopted as section 11, art. 15, the following: "This convention shall appoint not more than three persons learned in the law, whose duty it shall be to prepare a code of practice for the courts, both civil and criminal, in this state, by abridging and simplifying the rules of practice and laws in relation thereto; all of whom shall, at as early a day as practicable, report the result of their labors to the general assembly for their adoption or modification." Our present code was the result of the work of this commission, duly reported to and adopted by the succeeding general assembly; and one of the sections of this code is section 858, which reads as follows: "No act shall have the effect to amend or repeal, or be construed as amending or repealing, any title, chapter, article, section, clause or provision of the codes, unless such intention be expressly stated, and the title, chapter, article

or section shall be particularly referred to and recited in the act amending or repealing the same."

I am aware that it is said that one legislature cannot bind a succeeding one by its enactments, and the proposition is a correct one; but a constitutional commission, such as that which prepared and reported on the code, was of the constitutional convention, and its work was done under the authority of the constitutional convention. The mere fact that, in appointing the commission and giving directions, the convention gave the succeeding general assembly the privilege of adopting (not rejecting) or modifying the instrument reported to it by the commission does not take away from the report—the code—the dignity of a work of the constitutional convention.

All the general assemblies succeeding the adoption of the code for many years, I believe, carefully complied with the code provision in regard to amendments and repeals, and it really seems that the legislature, in its enactment of the amendment to the statutes of 1891 and 1875, had lost sight of the fact that the subject of legal notices was the subject of one of the sections of the code.

I think the amendatory act of 1893, in so far as it is construed to effect the code provision, was not passed with the formalities required by section 858 of the code of civil procedure, and, indeed, from its ambiguity and the absence of proper reference, is obnoxious to the general constitutional inhibition. On the subject generally, see opinion of Judge Freeman in *Home Ins. Co.* v. *Taxing District*, 4 Lea, 652, and the opinion in the case of *McGhee* v. *State*, 2 Lea, 622.

The judgment in my opinion should be affirmed.